UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AET INC. LTD. | § | |
| | § | |
| V. | § | C.A. No. 4:21-CV 00825 |
| | § | |
| INTERCONTINENTAL TERMINALS | § | FRCP 9(h) - ADMIRALTY |
| COMPANY LLC; INTERCONTINENTAL | § | |
| TERMINALS MANAGEMENT CO.; | § | |
| CIMA SERVICES, LP; and | § | |
| INSTRUMENTATION & ELECTRICAL | § | |
| SPECIALIST, LLC | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

AET Inc. Ltd. ("AET") files this Original Complaint against Intercontinental Terminals Company, LLC ("ITC"), Intercontinental Terminals Management Company ("ITMC"), CIMA Services, LP ("CIMA"), and Instrumentation & Electrical Specialist, L.L.C. ("IES") (collectively "Defendants") and would respectfully show the following:

## I.
## JURISDICTION

1.  This is a cause of action within the admiralty and maritime jurisdiction of the United States and this Honorable Court under 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure. This claim involves damages arising out of the March 2019 fire at ITC's facility and subsequent oil spill into the Houston Ship Channel.

2.  This Court also has subject-matter jurisdiction under 28 U.S.C. § 1331 and 33 U.S.C. § 2717(b) because AET seeks recovery of damages under the Oil Pollution Act ("OPA"), 33 U.S.C. § 2701, *et seq.*

23,416♦1PLLC3110

3. This Court has personal jurisdiction over ITC because ITC owns and operates an onshore terminal service facility located at 1943 Independence Parkway South, La Porte, Texas 77571 ("Deer Park Facility") and maintains a corporate office at 1021 Main Street, Suite 1150, Houston, Harris County, Texas 77002. Similarly, this Court also has personal jurisdiction over ITMC, CIMA, and IES because they conduct business within the judicial district.

## II.
## VENUE

4. Venue is proper under 28 U.S.C. § 1391 and 33 U.S.C. § 2717(b), as a substantial part of the events or omissions giving rise to these claims occurred in the judicial district, the discharge or injury or damages occurred in the district, and the Defendants reside, may be found, or have their principal office in the district.

5. AET is the registered and/or disponent owner of the vessels M/T Eagle San Juan (IMO No. 9594846), M/T Eagle Kinabalu (IMO No. 9422196), and M/T Eagle Texas (IMO No. 9518907).

6. Defendant ITC is a Delaware limited liability company with its principal place of business located at 1943 Independence Parkway, La Porte, Texas 77571. ITC may be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 1900, Dallas, Texas, 75201.

7. Defendant ITMC is a Texas corporation with its principal place of business located at 2424 Hazard Street, Houston, Texas 77019. ITMC may be served through its registered agent, Norma T. Reynolds, 3262 Westheimer Road, Suite 234, Houston, Texas 77098.

8. Defendant CIMA is a domestic limited partnership with its principal place of business at 790 W. Sam Houston Parkway N., Suite 202, Houston, Texas 77024. CIMA may be

served through its registered agent, Bradley W. Rapp, 1980 Post Oak Boulevard, Suite 1200, Houston, Texas 77056.[1]

9.      Defendant IES is a domestic limited liability company with its principal place of business at 2417 Randolph Road, Pasadena, Texas 77503.  IES may be served through its registered agent Joseph Alger Durso III at 17711 Willow Pond Road, Alvin, Texas 77511.[2]

## IV.
## FACTS

10.     ITC's Deer Park Facility is located on 265 acres situated along the Houston Ship Channel ("HSC").

11.     The Deer Park Facility has 13.1 million barrels of capacity in 242 tanks.  It stores petrochemical gases and liquids, as well as fuel oil, bunker oil, and distillates.  The Deer Park Facility advertises capacity for up to five (5) ocean-going tankers and fifteen (15) barges simultaneously.

12.     On the morning of March 17, 2019, an above-ground storage tank (No. 80-08) containing naphtha caught fire at the Deer Park Facility in the 2nd 80's Tank Farm.  This portion of the facility consisted of fifteen (15) 80,000-barrel capacity above-ground storage tanks.

13.     At the time of the fire, ITC had not equipped the Deer Park Facility with a fixed gas detection system, which would have activated alarms to warn ITC personnel of a product release.  As a result, ITC did not know about the naphtha release before the fire.  Additionally,

---

[1]     The general partner of CIMA is CIMA Services Management, Inc., which is a domestic corporation with its principal place of business in Houston, Texas.

[2]     IES has three members: Joseph A. Durso III, Ann Durso, and Cassie Achille.  All three members are individuals domiciled in Texas.

ITC did not equip Tank 80-08's piping manifold with emergency or remotely operated isolation valves. As a result, ITC was unable to control the release of naphtha.[3]

14. Before the fire, ITC hired IES and CIMA to revise the butane injection system and piping manifold of Tank 80-08 for the specific purpose of reducing the time required to offload trucks. IES performed the instrumentation and electrical work. CIMA provided labor and equipment. Rather than replace the 2-inch piping with new 4-inch piping, CIMA installed used piping that was inadequate to serve as a butane injection line. CIMA was also responsible for obtaining all required work permits and conducting inspections and tests on the newly installed butane injection line. CIMA failed to adequately conduct these inspections and tests. As a result, the butane injection system failed and caused the release of naphtha.[4]

15. The affected tanks contained Oil, as defined by the Oil Pollution Act, 33 U.S.C. § 2701(23), including: naphtha (No. 80-08), pyrolysis gasoline (Nos. 80-07; 80-14; 80-15), gasoline blendstock (Nos. 80-02; 80-03; 80-06), and base oil (No. 80-11).[5]

16. As a result of the initial inferno, eleven (11) of the fifteen (15) tanks collapsed or partially collapsed, causing the discharge of Oil products and presenting a substantial threat of discharge of Oil into the HSC and the navigable waters of the United States.

17. By the early morning hours of March 20, 2019, the initial fire at the Deer Park Facility was fully extinguished. Firefighting crews continued to spray foam and water on the tanks to prevent reignition.

---

[3] *See* U.S. Chemical Safety and Hazard Investigation Board – Factual Update – Storage Tank Fire at Intercontinental Terminals Company, LLC (ITC) Terminal (Published October 30, 2019) § 2.2, available at https://www.csb.gov/assets/1/20/itc_factual_update_2019-10-30.pdf?16522 (last accessed March 5, 2021).

[4] *Id.*

[5] *See* ITC Tank Map, available at https://www.deerparktx.gov/DocumentCenter/View/7267/ITC-Tank-Map?bidID (last accessed March 5, 2021).

18. On March 21, 2019, the *M/T Eagle San Juan* arrived at the Houston Fuel Oil Terminal Company ("HFOTCO"), Ship Dock 5, located just north of the Deer Park Facility. Notice of readiness was accepted at 2330 hours on the evening of March 21, 2019, and the *M/T Eagle San Juan* commenced discharging cargo at 0118 hours on March 22, 2019.

19. On March 22, 2019, the fire reignited, causing a "catastrophic breach" of the Deer Park Facility's containment wall, which released "an estimated 470,000–523,000 barrels of a mixture of fire water, firefighting aqueous film forming foams (AFFF), and remaining benzene, ethylbenzene, naphtha, xylene, toluene, pyrolysis gas (pygas), and other refined base oils from the storage tanks . . . into Tucker Bayou and adjacent waters, sediments, and habitats." The Oil and other chemicals "were carried out by stream flow and tides into the San Jacinto River, Houston Ship Channel, Carpenters Bayou, Old River, Santa Ana Bayou, and surrounding water bodies."[6]

20. ITC's Incident Commander Brent Weber described the Oil discharged into the navigable waters of the United States as "a mixture of the products that were in the tanks before the event occurred, which is primarily in that tank farm: gas blendstocks, naphtha, xylene, and pygas."[7]

21. In response to the containment wall failure, the U.S. Coast Guard closed a portion of the HSC to all vessel movements between Tuckers Bayou and Light 116. Later that evening, the USCG Sector Houston-Galveston office ordered the stoppage of all cargo operations in the

---

[6] *See* Notice of Intent to Perform a Natural Resource Damage Assessment (August 5, 2019), available at https://www.cerc.usgs.gov/orda_docs/DocHandler.ashx?task=get&ID=5609 (last accessed March 5, 2021).

[7] *See* Press Conference, ITC Deer Park Fire and Cleanup (March 23, 2019), available at: https://youtube.com/watch?v=Xnzm2OEthJk&feature=youtu.be&t=1467 (last accessed March 5, 2021).

Houston Ship Channel from Cargill Facility East Terminal to the Cemex USA Terminal, which is between Lights 139 and 129 of the HSC.

22. The *M/T Eagle San Juan* was no exception. At 1648 hours on March 22, 2019, all cargo operations ceased. Cargo operations did not recommence until 1354 on March 26, 2019.

23. The cargo operations were interrupted for several days as a result of the fire at the Deer Park Facility and the resulting toxic fumes and oil spill, causing damages to AET in the form of demurrage costs, loss of charter, and additional bunker consumption. AET also incurred additional agency fees and other port related expenses related to the delay and decontamination.

24. On March 26, 2019, the Master of the *M/T Eagle San Juan* issued a Notice of Protest to ITC for any and all losses and damages relating to the fires at ITC and subsequent releases into the Houston Ship Channel, including but not limited to personal injury to the crew and related medical expenses, costs to evacuate and house crew, damages to the Vessel, decontamination, delay time or otherwise. **Ex. 1**, Letter of Protest (Eagle San Juan 0042).

25. To cover for the loss of use of the *M/T Eagle San Juan*, AET was required to charter the *M/T NS Champion* to cover its lightering contract for a period of 5.008 days at a day rate of $24,500.00 per day plus consumption of bunkers (58.9 MT of LSMGO at $728.50 per MT).

26. Additionally, as a result of the ITC fire, AET lost freight from March 27 at 1130 through April 1 at 0812 (4.8625 days x $30,038/day).

27. Additionally, as a result of the ITC fire, the *M/T Eagle San Juan* was subject to demurrage for the disruption of cargo operations from March 22 at 1648 through March 26 at 1354 (3.8792 days x $35,000 per day x 50%).

28. Additionally, as a result of the ITC fire, the *M/T Eagle San Juan* consumed additional bunkers while on demurrage during the cargo disruption (23.20 MT LSMGO from March 22 through March 26) and after completion of cargo, but while delayed from the fire and release (18.10 MT LSMGO).

29. Additionally, as a result of the ITC fire, AET incurred additional travel expenses for crew sign-off/sign-on and medical expenses for crew exposure and screening/treatment.

30. Additionally, as a result of the ITC fire, AET incurred expenses for its shore personnel to respond to the incident.

31. As a result of the ITC fire, AET's other vessels— *M/T Eagle Texas* and *M/T Eagle Kinabalu* — consumed additional bunkers. The *M/T Eagle Texas* consumed 8.1 MT of LSMGO from the time it completed its cargo discharge operation on the afternoon of March 29, 2019 and the morning of March 31, 2019 when it was permitted to leave its berth at the Enterprise terminal on the Houston Ship Channel and proceed outbound past the ITC fire. The *M/T Eagle Kinabalu* consumed 7.8 MT of LSMGO during the time required to clean the hull of the ship following its departure from the Enterprise terminal on the Houston Ship Channel on April 3, 2019.

**Agency Responses to ITC Fire and Oil Spill**



32.     The EPA issued a report entitled "Field Report for Airborne Data Collected in Support of USA EPA Region 6 Intercontinental Terminals Company LLC Fire 23 March 2019." The report includes the above image with an explanation stating, "[c]aptured oil behind the boom is evident as is light sheen leakage moving into the channel."[8]

---

[8]     *See* Field Report for Airborne Data Collected in Support of US EPA Region 6 Intercontinental terminals Company LLC Fire (March 23, 2019), available at: https://response.epa.gov/sites/14150/files/ASPECT%20report%20ITC%20Fire%2023%20March%202019%20final.pdf (last accessed 5 March 2021).

33. The EPA continued their ASPECT (Airborne Spectral Photometric Environmental Collection Technology) overflights to monitor the air quality and observe the oil sheen in the HSC.[9]

34. On March 25, 2019, "IR images collected over the confluence into the ship channel continued to show boomed oil products with some leakage occurring with sheen being driven to the southwest due to winds. No significant chemical detections were observed on this flight."[10]

35. On March 27, 2019, "the confluence into the ship channel continued to show sheen in the waterway." *Id.* By then, more than half a million gallons of oily water had been skimmed and removed from the HSC and related waterways.[11]

36. On April 12, 2019, "sheen remain[ed] in the boomed areas" and "[a] small amount of sheen leakage was observed migrating into the main channel."[12]

37. The Texas Commission on Environmental Quality ("TCEQ"), the Texas Parks and Wildlife Department, the Texas General Land Office, the National Oceanic and Atmospheric Administration, and the U.S. Department of the Interior (collectively, the "Trustees") can perform a natural resource damage assessment related to the incident. On August 5, 2019, the

---

[9]     *See generally* EPA, ASPECT – EPA's Airborne Spectral Photometric Environmental Collection Technology (ASPECT), available at: https://www.epa.gov/emergency-response/aspect (last accessed March 5, 2021).

[10]    *See* Field Report for Airborne Data Collected in Support of US EPA Region 6 Intercontinental Terminals Company LLC Fire (April 15, 2019), available at: https://response.epa.gov/sites/14150/files/ASPECT%20report%20ITC%20Fire%2015%20April%202019%20final.pdf (last accessed March 5, 2021).

[11]    *See* "Oil, sludge not contained near Deer Park chemical fire, Coast Guard says," (March 26, 2019), available at: https://www.click2houston.com/news/2019/03/26/oil-sludge-not-contained-near-deer-park-chemical-fire-coast-guard-says/ (last accessed March 5, 2021).

[12]    *See* Field Report for Airborne Data Collected in Support of US EPA Region 6 Intercontinental Terminals Company LLC Fire (April 15, 2019), available at: https://response.epa.gov/sites/14150/files/ASPECT%20report%20ITC%20Fire%2015%20April%202019%20final.pdf (last accessed March 5, 2021).

Trustees issued their intent to perform a damage assessment "resulting from the release of hazardous substances, oil, and other chemicals at and from the ITC Facility into Tucker Bayou and the surrounding area."[13]

38. The Trustees also issued their Preassessment Screen and Determination concluding: "In all, approximately 50 different chemicals regulated under CERCLA, the Clean Water Act (CWA), and OPA were released from the Facility. Thirty-six of the chemicals released are on the EPA's substance Registry Service, 17 are on the Consolidated List of Lists under CERCLA, and 5 are listed on OPA [sic] list Of [sic] Petroleum and Non-petroleum Oils."[14]

39. The Trustees determined the following OPA products were released into the HSC and the navigable waters of the United States: naphtha, pyrolysis gas (pygas), and other refined oil and petrochemical products including petroleum, distillates (petroleum) hydrotreated heavy paraffinic, and distillates (petroleum) solvent-dewaxed heavy paraffinic.[15]

40. The Trustees also commented that they were "unaware of any other exclusion or defense to liability under CERCLA, the Oil Pollution Act (OPA), or other applicable laws."[16]

41. On January 7, 2020, TCEQ published an After Action Review ("AAR") addressing the incident[17] and confirming that the Deer Park Facility fire and resulting oil spill

---

[13] *See* Trustees' Notice of Intent to Perform a Natural Resource Damage Assessment (August 5, 2019), available at: https://www.cerc.usgs.gov/orda_docs/DocHandler.ashx?task=get&ID=5609 (last accessed March 5, 2021).

[14] *See* Trustees' Notice of Intent to Perform a Natural Resource Damage Assessment (August 5, 2019), available at: https://www.cerc.usgs.gov/orda_docs/DocHandler.ashx?task=get&ID=5610 (last accessed March 5, 2021).

[15] *Id.*

[16] *Id.*

involved the discharge of at least the following OPA products into the HSC: naphtha, pyrolysis gas (pygas), gasoline blendstock, and base oil.[18]

42. After the discharge, the AAR reported that "[b]ooms were deployed, and the U.S. Coast Guard closed a portion of the HSC between Tucker Bayou and the San Jacinto Monument to Crystal Bay."[19]

43. The AAR also describes how U.S. Coast Guard personnel were "directly involved in the oversight and management of on-water recovery and remediation efforts of contracted Oil Spill Response Organizations" ("OSRO").[20]

44. OSRO is a classification established by the U.S. Coast Guard in response to the regulatory requirements of OPA. "OSRO is a voluntary program that was developed to assist oil handling facilities and vessels in preparing spill response plans."[21]

45. According to the AAR, "the UC [Unified Command] and its contracted OSROs recovered 223,882 bbls [barrels] of oily-water petro-chemicals from waterways surrounding the ITC tank farm and HSC."[22] Efforts by the U.S. Coast Guard "led to the successful recovery of over 9.4 million gallons of oily-water petro-chemicals from the HSC and adjacent commercial waterways, as well as the decontamination of 224 vessels."[23]

---

[17]   See TCEQ After Action Review Report (January 7, 2020), available at: https://www.tceq.texas.gov/assets/public/response/smoke/air/final-ITCFire-AAR-01.07.2020.pdf (last accessed March 5, 2021).

[18]   *Id.* at § 2.0.

[19]   *Id.* at § 2.0.

[20]   *Id.* at § 3.3.2.

[21]   *Id.*

[22]   *Id.*

[23]   *Id.* at § 3.4.2.

46. To that end, according to the AAR, "214 response vessels, 142 skimmers, 50 vacuum trucks, and the placement of nearly 168,000 feet of boom were utilized to mitigate the substantial threat to the environment and nationally significant economic waterway."[24]

## V.
## FIRST CAUSE OF ACTION
## NEGLIGENCE AGAINST THE DEFENDANTS

47. Plaintiff re-alleges and incorporates herein each and every allegation and averment contained in the preceding paragraphs.

48. The Defendants owed a legal duty to the Plaintiff to safely operate the Deer Park Facility.

49. Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any chemical storage terminal of ordinary prudence under the same or similar circumstances, and Defendants breached that duty, including, but not limited to, one or more of the following:

   a. Failure to develop, implement, and maintain proper operational procedures and protocol concerning safe chemical storage;

   b. Failure to develop, implement, and maintain proper safety procedures and protocol concerning safe chemical storage;

   c. Failure to properly maintain chemical storage tanks and related equipment;

   d. Failure to install proper equipment to prevent and contain a chemical release;

   e. Failure to adequately prepare for and implement effective procedures to prevent and contain a chemical release and fire;

   f. Failure to take reasonable action to prevent the chemical release and fire or minimize the effects thereof;

---

[24] *Id.*

  g. Failure to properly train or manage its agents, servants, and employees to handle a chemical release and fire;

  h. Failure to exercise reasonable care under the circumstances; and,

  i. Other acts of negligence that may be determined as discovery progresses.

50. The Defendants breached their duty to the Plaintiff by failing to maintain safe operations, causing a fire and subsequent oil spill.

51. The careless and negligent conduct of Defendants and the defective equipment of the Deer Park Facility caused the staining on the hull of the *M/T Eagle San Juan* and delays experienced by the *M/T Eagle Kinabalu* and *M/T Eagle Texas* and subsequent damages to Plaintiff.

52. As a direct and proximate result of the Defendants' negligence, the Plaintiff has suffered an injury and sustained damages for which the Defendants are liable.

## VI.
## SECOND CAUSE OF ACTION
## THE OIL POLLUTION ACT (33 U.S.C. § 2701)

53. Plaintiff re-alleges and incorporates herein each and every allegation and averment contained in the preceding paragraphs.

54. The Oil Pollution Act ("OPA") imposes liability upon a "responsible party for a . . . vessel or a facility from which oil is discharged, or which poses a substantial threat of a discharge of oil into or upon navigable waters or adjoining shorelines" for the damages that result from the incident, as well as removal costs. 33 U.S.C. § 2702(a).

55. ITC is the "Responsible Party" as defined under 33 U.S.C. § 2701(32) for the Deer Park Facility fire and resulting oil spill into the HSC.

56. The Deer Park Facility fire and resulting oil spill into the HSC involved a discharge of Oil under the OPA.

57. OPA imposes liability upon a Responsible Party for an incident, meaning "any occurrence or series of occurrences having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or substantial threat of discharge of oil." 33 U.S.C. § 2701(14).

58. ITC is strictly liable as the Responsible Party for all the damages resulting from the Deer Park Facility fire and resulting oil spill under OPA.

59. The fire, collapse of storage tanks containing Oil, and subsequent breach of the containment area constitute a series of occurrences that caused a discharge and the substantial threat of a discharge of Oil into the HSC.

60. ITC has no right to limit its liability under any provision of OPA because the incident was proximately caused by its gross negligence or willful misconduct, or the violation of an applicable safety, construction or operating regulation by ITC, an agent or employee of ITC, or a person acting pursuant to a contractual relationship with ITC.

61. As a result of the Deer Park Facility fire and resulting oil spill, AET has a right to recover damages under OPA, which provides for the recovery of the loss of profits or impairment of earning capacity due to the incident.

62. AET has satisfied all conditions precedent to commencement of this action under OPA, including, without limitation, by timely presenting its claims to ITC on April 13, 2020. The claims documents presented to ITC with reference to the *M/T Eagle San Juan* are attached as **Exhibit 1**. The claims documents presented to ITC with reference to the *M/T Eagle Texas* are attached as **Exhibit 2**. The claims documents presented to ITC with reference to the *M/T Eagle Kinabalu* are attached as **Exhibit 3**.

63. ITC did not settle AET's claims by payment within 90 days after the date upon which the claims were presented.

64. ITC rejected AET's claims by not responding thereto.

## VII.
## DAMAGES

65. As a direct result of the Deer Park Facility fire and subsequent oil spill, AET experienced at least **$454,023.72** (*Eagle San Juan* - $442,479.98; *Eagle Texas* - $5,856.30; *Eagle Kinabalu* - $5,687.44) in damages, including economic losses, additional fees, demurrage, costs and expenses, lost revenue, lost profits, and other damages it would not have experienced but for the incident. AET incorporates its damages claim documentation attached as **Exhibit 1**, **Exhibit 2**, and **Exhibit 3** hereto pursuant to FED. R. CIV. P. 10(c).

## IX.
## CONDITIONS PRECEDENT

66. All conditions precedent have been performed, satisfied or discharged by AET.

67. All and singular, the premises of this Original Complaint are true and correct and within the jurisdiction of the United States and this Honorable Court.

## X.
## PRAYER

Plaintiff, AET Inc. Ltd., prays that it recovers judgment of and from the Defendants for the actual damages in such amount as the evidence may show, together with prejudgment interest, post-judgment interest, reasonable attorneys' fees, costs of court, and such other and further relief to which it may show itself to be justly entitled.

                Respectfully submitted,

                */s/ James T. Bailey*
                Robert L. Klawetter
                Fed. I.D. No. 2471
                State Bar No. 11554700
                klawetter@easthamlaw.com
                James T. Bailey
                Fed. I.D. No. 30347
                State Bar No. 24031711
                bailey@easthamlaw.com
                Cameron A. Hatzel
                Federal I.D. 1128943
                State Bar No. 24074373
                hatzel@easthamlaw.com
                The Niels Esperson Building
                808 Travis Street, Suite 1300
                Houston, Texas  77002
                Telephone: (713) 225-0905
                Facsimile:  (713) 225-2907

                *Attorneys for AET Inc. Ltd.*

OF COUNSEL:

EASTHAM, WATSON, DALE & FORNEY, L.L.P.